CHAUNCEY J. BARBER, LOUIS H. WOLFSON, ELEANOR C. GALLAGHER, ELBERT H. POGUE, HELEN D. MANSHIP, CHARLES PATERNA, ALPHONSE D. CIAMBELLI AND WALTER COLQUHOUN, PLAINTIFFS, v. THE BOARD OF SCHOOL ESTIMATE OF THE ELIZABETH SCHOOL DISTRICT, THE BOARD OF EDUCATION OF THE CITY OF ELIZABETH IN THE COUNTY OF UNION, A BODY CORPORATE OF THE STATE OF NEW JERSEY, THE CITY OF ELIZABETH, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY AND CITY COUNCIL OF THE CITY OF ELIZABETH, UNION COUNTY, NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided January 15, 1962.

558

*Mr. Ralph V. Mancini,* attorney for plaintiffs.

*Mr. John L. Ard,* City Attorney, attorney for defendants Board of School Estimate and City of Elizabeth.

*Mr. Joseph G. Barbieri,* attorney for codefendant Board of Education.

FELLER, J. S. C.  This is a proceeding by complaint in lieu of prerogative writs to challenge the actions of the Elizabeth Board of Education, Board of School Estimate and City Council of the City of Elizabeth resulting in the final adoption on March 29, 1961 of the municipal budget for municipal operation and public school purposes, insofar as it affects and pertains to the appropriation of money for public school purposes.  Plaintiffs also seek the court's order directing defendants to proceed under and pursuant to *R. S.* 18:6–55 to 57 and to fix, determine, appropriate and pay to the custodian of school funds the amount of money necessary for public school purposes for the school year 1961–1962.

A consent pretrial order has been filed.  All pertinent facts have been stipulated by counsel for the respective parties, and the matter came before the court on briefs and oral argument on motion for summary judgment made in behalf of plaintiffs and defendants.

The facts are that on January 13, 1961 defendant board of education prepared and delivered copies of its proposed budget for public school purposes for the school year 1961–1962 to defendant board of school estimate in the sum of $6,408,248.71.  On February 14, 1961 defendant board of school estimate, after public hearing, fixed and determined the amount of money necessary for this purpose at $6,308,248.71.  On February 15, 1961 its certificate to such effect was made and delivered to defendants board of

education and city council. Thereafter, at its meeting of February 28, 1961 defendant city council refused to concur in and consent to the appropriation of the amount so certified to it.

On March 27, 1961 defendant board of school estimate, without further public hearing, rescinded its actions of February 14 and 15, 1961 and made a new determination of the amount necessary for public school purposes and fixed the same at $6,147,730.86. On March 28, 1961 defendant board of school estimate made and delivered its certificate for that amount to defendants city council and school board, and on the same day defendant city council by its resolution concurred in and consented to said amount. On March 29, 1961 defendant city council formally approved and adopted the municipal budget for municipal operation and public school purposes, the latter in the amount previously approved by it at its said meeting of March 28, 1961.

Plaintiffs contend that all proceedings and actions of defendants following the certification by defendant board of school estimate on February 15, 1961 are improper, illegal, without legal sanction or authority and therefore invalid and void; that defendant city council's continued refusal to concur in and consent to the appropriation of the amount certified to it by defendant board of school estimate in February 1961 constitutes and creates an emergency within the meaning and intent of *R. S.* 18:6–55 *et seq.;* that defendant city council should be directed to reconsider its failure and refusal to concur in and consent to the amount certified to it on February 15, 1961; that in the event defendant city council should continue to withhold its concurrence and consent, defendants school board and board of school estimate should be directed to proceed forthwith in accordance with *R. S.* 18:6–55 *et seq.* to fix and determine the amount of money necessary for the use of the public school system for the public school year 1961–1962, and that defendants city council and City of Elizabeth should be directed forthwith to appropriate the sums so certified to it by defendant board

of school estimate as necessary for the operation and maintenance of the public school system for the ensuing school year 1961–1962 and to pay the same forthwith to the custodian of school funds for such purpose.

Defendants deny the legal contentions of plaintiffs and further contend that plaintiffs' request for relief is premature because plaintiffs have not exhausted their administrative remedies. Defendants have abandoned several of their separate defenses, including the fifth separate defense which alleges that the plaintiffs are not proper parties to this suit. The parties have waived service of formal notice of motion for summary judgment.

## I.

In a separate defense, defendants assert that plaintiffs are required to exhaust their administrative remedies before making application to this court. Any failure to exhaust administrative remedies is not a bar to the plaintiffs' right to bring this action. There is no question that *R. R.* 4:88–14 provides that, in the usual case, administrative remedies are to be exhausted before a proceeding is to be started in lieu of prerogative writs. This rule provides as follows:

"Except where it is manifest that the interests of justice require otherwise, proceedings under Rule 4:88 shall not be maintainable, so long as there is available judicial review to a county court or inferior tribunal or administrative review to an administrative agency or tribunal, which has not been exhausted."

It should be noted at the outset that the rule is not absolute by its very terms. The rule was intended as a simple rule of ordinary procedure. *Ward v. Keenan,* 3 *N. J.* 298 (1949). The rule has constantly been departed from where the interests of justice require. Reference may be had to *Waldor v. Untermann,* 10 *N. J. Super.* 188 (*App. Div.* 1950), which was an action for the ouster of the defendant as a member of the Board of Education of the City of Newark.

Justice (then Judge) Jacobs, in discussing this rule, relied on a school case in part when he said, at *page* 191, regarding the rule:

"However, it was neither jurisdictional nor absolute and was departed from where, in the opinion of the court, the interests of justice so required. See *Lane v. Bigelow*, 135 *N. J. L.* 195, 200 (*E. & A.* 1947); *Conaway v. Atlantic City*, 107 *N. J. L.* 404, 408 (*Sup. Ct.* 1931); *Koven v. Stanley*, 84 *N. J. L.* 446, 447 (*Sup. Ct.* 1913). In the *Lane* case the Court of Errors and Appeals permitted judicial determination without exhaustion of the administrative remedy available under the Zoning Act and adopted the position taken earlier in the *Conaway* case that the court had 'power to intervene, and in a proper case will intervene, without waiting for intermediate statutory remedies to be exhausted.' In the *Koven* case the Court entertained a *quo warranto* proceeding to determine the title to office of members of a school board without awaiting determination of the double appeal to the Commissioner and the State Board of Education. After expressing his thought that the administrative tribunals could not take dispositive action on the issue presented Justice Swayze said: 'I think it clear that where so important a question as the title of members of a school board to their office is involved, a proper exercise of discretion permits, if it does not require, the speedy adoption of the only final and effective procedure to determine the question.' "

The court, in *Waldor*, allowed the matter to proceed even though the plaintiff had not exhausted his administrative remedies because (as indicated at *page* 193) "\* \* \* the matter was of importance to the community and expeditious determination was directly in the public interest." The court also concluded (at *page* 192) that the matter "\* \* \* did not involve any questions of administrative policy, discretion or judgment." Similarly, this matter is of extreme importance to all connected with the City of Elizabeth, and expeditious determination is imperative, particularly where, as here, the budget and the tax ordinance are affected. Moreover, the questions involved do not concern any administrative policy, discretion, or judgment.

In *Nolan v. Fitzpatrick*, 9 *N. J.* 477 (1952), the situation was somewhat analogous to that presented here. In the case at bar, the plaintiffs are seeking a determination com-

pelling the City of Elizabeth to make an appropriation certified to it by the board of school estimate. In the *Nolan* case certain members of the Boulevard Commissioners of the County of Hudson brought an action in lieu of prerogative writs to compel the Board of Chosen Freeholders of the County of Hudson to raise a certain amount certified to such board of chosen freeholders by the boulevard commissioners. The court ultimately held that the defendant board was to appropriate immediately the funds requisitioned by the plaintiff commissioners. Regarding the contention that the plaintiffs had not exhausted their administrative remedies, the late Chief Justice Vanderbilt, speaking for the court, said as follows (at *pages* 486–487):

"* * * On the contrary, whenever the rule of exhaustion of remedies is asserted as a defense in a proceeding in lieu of prerogative writ *Rule* 3:81–14 both expressly and in spirit calls for a determination as to whether or not the interests of justice require an exception.

What are the requirements of justice in the instant case? The question presented in this case is solely one of law. Any determination of that question either by the Director of the Division of Local Government, *N. J. S. A.* 40:2–53, or by the Division of Local Government, *N. J. S. A.* 52–27BB, would clearly be subject to judicial review, *N. J. S. A.* 40:2–53 and *N. J. S. A.* 52:27BB–20. On such judicial review of a question of law the opinions of these administrative tribunals would not be persuasive as they would be on questions of fact within their purview. The only result of requiring an exhaustion of administrative remedies where only a question of law is in issue would be useless delay, and this in the interest of justice cannot be countenanced. The case thus presents another instance (*i. e.,* where the disposition of the matter depends solely on the decision of a question of law) in addition to the two situations specifically stated in *Ward v. Keenan,* where under *Rule* 3:81–14 the interests of justice do not require the exhaustion of administrative remedies."

What was said above in *Nolan* is equally applicable to the case at bar. The question involved in this case is solely a question of law. The only result of requiring an exhaustion of administrative remedies would be useless delay. Therefore, because of the nature of the matter and because the

question is solely one of law, this court will proceed and determine the legal questions raised at the oral argument.

## II.

■ The City of Elizabeth comprises what is commonly known as a chapter VI school district, *i. e.*, a school district operating under the provisions of *Title* 18, *chapter* VI of the *New Jersey Revised Statutes*. Under the provisions of *section* 50 of the said chapter (*N. J. S. A.* 18:6–50) the board of school estimate is required to fix the amount of money necessary for the ensuing year, and certify the same to the governing body of the city, by not later than February 15. Under *section* 53 of said chapter (*R. S.* 18:6–53), if the budget so certified exceeds a certain amount, the governing body can, in its discretion, reject it. The statutes make no provision for a second certification, made after February 15 by the board of school estimate in the event that the governing body exercises its prerogative under *R. S.* 18:6–53. As the plaintiffs point out, this would seem to leave us with the anomalous result whereby, in the situation described above, no further amounts can be certified, and therefore no money could be appropriated for the ensuing school year. The plaintiffs attempt to solve this dilemma by suggesting that the emergency provisions of *R. S.* 18:6–55 *et seq.* be used to fill the void. It is my opinion that a rejection under *R. S.* 18:6–53 does not create a void, and furthermore, even if such a void were created, the emergency powers are not applicable and could not be used to fill it.

That the emergency provisions are not applicable to the situation before the court is evident from a reading of the statutes themselves and from the decision of the court in its interpretation of the emergency statutes in *Bd. of Ed. of Elizabeth v. Elizabeth*, 13 *N. J.* 589 (1953).

The Elizabeth school district operates on a school year running from July 1 to June 30. The annual appropria-

tion, which is the figure in controversy here, is certified by February 15 of each year by the board of school estimate and covers the anticipated expenses of the *ensuing* school years, that is, the school year commencing the following July 1. See *N. J. S. A.* 18:6–49 and 18:6–50. The emergency funds, on the other hand, consist of money necessary for the school year then in progress. This is evident from a reading of the statutes themselves. Whereas *N. J. S. A.* 18:6–49 and 18:6–50, dealing with annual appropriations, speak repeatedly in terms of the *"ensuing school year"* (and the word "ensue" means "to follow after; to follow in order," *Black's Law Dictionary* (3d ed.), p. 664, and also means "to come afterward or as a consequence," *Webster's New Collegiate Dictionary, p.* 274), the word "ensuing" is dropped in *R. S.* 18:6–55 (emergency estimate) and the term "current expenses * * * for the school year" is used. In addition, *R. S.* 18:6–55 uses language such as "underestimated in its annual estimate," "unforeseen when its annual estimate was made up," and "emergencies which had arisen since the making of the annual estimate." It is clear that the annual estimate is a forecast of the anticipated financial requirements for the coming or ensuing year, while the emergency fund is designed to cover unexpected or unforeseen expenses which come to light during the course of the current school year.

On *page* 593 of his decision in *Bd. of Ed. of Elizabeth v. Elizabeth, supra,* the late Chief Justice Vanderbilt stated that "In the orderly conduct of school affairs budget making should be an annual process except for real emergencies." And on that same page the court stated that "In a school case an emergency has been defined as 'a sudden or unexpected occurrence or condition calling for immediate action.'" In the case *sub judice* the present situation is not a "real emergency," nor is it "a sudden or unexpected occurrence." The present controversy developed approximately three months prior to the time that the subject budget was meant to be expended. In my opinion this does

not create the urgency requirements described in *Bd. of Ed. of Elizabeth v. Elizabeth, supra.*

Furthermore, there was no evidence before the court that an emergency existed as defined in *Bd. of Ed. of Elizabeth v. Elizabeth, supra.* Apparently the board of education is fulfilling its obligations and duties—as set forth in the statutes—within the budget finally adopted for the current school year, and the only authority that can declare an emergency to collect additional funds is the board of education.

*R. S.* 18:6–55 provides as follows:

"When a *board of education shall decide* that it has underestimated * * * the board of education shall prepare and deliver to each member of the board of school estimate, a statement of the amount of money estimated to be necessary for such purpose or purposes." (Emphasis supplied)

Thus, the statute clearly provides for the proper body to initiate emergency appropriations for school purposes. However, assuming that the board of education should initiate the emergency action, the question of an emergency is a substantial question of fact. *Bd. of Ed. of Elizabeth v. Elizabeth, supra,* at *page 595.*

There is no proof before this court that the board of education has declared an emergency or that an emergency in fact existed.

### III.

Plaintiffs allege that the use of the emergency provisions of *chapter* VI is proper because of a void created by the refusal of the city council to appropriate the budget which was certified to it by the board of school estimate. They reason that the board of school estimate was unable to act after February 15, 1961 and, therefore, the failure of the council to accept the budget certified to it on February 15, 1961 left the board of school estimate powerless to certify any further amounts. Plaintiffs then conclude that

the normal process of appropriating the school budget having broken down, no money could be appropriated for the 1961–1962 school year. Plaintiffs attempt to solve this dilemma by substituting the emergency procedure for the normal process.

Plaintiffs in support of their arguments, on *page* 28 of their brief, state as follows:

"It will be argued that this interpretation strips the governing body of the element of control over public school budgets which is granted to it under *R. S.* 18:6–53, by virtually compelling its concurrence and consent to the Board of School Estimate action under threat of an emergency action in the event such be withheld."

Plaintiffs further argue that the concurrence and consent of the governing body was never conceived as a sacrosanct requisite. But this argument is not in accordance with the language of *R. S.* 18:6–53 which reads:

"\* \* \* No amount in excess of one and one-half per cent of the valuation of the assessable ratables of any municipality as determined by the county board of taxation shall be appropriated except with the concurrence and consent of the governing body expressed by its resolution duly passed."

It is difficult to interpret this language to be a negation of the requisite of concurrence and consent by the governing body. Accepting plaintiffs' argument, that all action by the board of school estimate is void subsequent to February 15, would lead one to the conclusion that the State Legislature, in enacting *N. J. S. A.* 18:6–50, was setting up machinery to allow the board of school estimate to frustrate the governing body from refusing to concur to an estimate over $1\frac{1}{2}\%$ of the ratables. It becomes very obvious under this argument that if the board of school estimate deliberately delayed action until February 15, the governing body must concur with the resolution inasmuch as the board of school estimate would be powerless to reconsider its estimate and submit another figure after February 15. Such an interpre-

tation of *N. J. S. A.* 18:6–50 would be contrary to the purpose of *R. S.* 18:6–53. A statute will not be construed so as to reach an absurd or anomalous result. *Robson v. Rodriguez,* 26 *N. J.* 517 (1958). The legislative intendment was certainly to allow the governing body an opportunity to evaluate the wisdom of a school estimate when said estimate exceeds a certain amount. *N. J. S. A.* 18:6–50 and *R. S.* 18:6–53 are *in pari materia* and, therefore, must be construed together so as to effectuate general legislative policy. *Jersey City v. Department of Civil Service,* 7 *N. J.* 509 (1951); *Palmer v. Kingsley,* 27 *N. J.* 425 (1958).

Plaintiffs maintain that the rights of the public were violated when the board of school estimate rescinded its original certification and substituted therefor a new budget in a substantially reduced amount. The tenor of this argument is that a public meeting was had to discuss the original budget but no such public review was given to the lesser amount which was finally appropriated. The court is not in agreement with this contention.

A public hearing was held in accordance with the provisions of *N. J. S. A.* 18:6–50. However, neither the board of school estimate nor the city council was obliged to follow the opinion of the majority in attendance at such a meeting. A public hearing should not be confused with a referendum. The value of such a meeting is to give the board the benefit of a knowledge of the feelings of the citizens present in regard to the matter under discussion. The board, so equipped, may then weigh the reaction of the citizens in attendance at the meeting, with all the other related factors, before arriving at a decision.

The power to control expenditure is historically committed to the people in one of two ways—either through the device of the referendum or through their duly elected officers who are periodically called upon to justify their stewardship. Our Supreme Court, in *Union County Park Commission v. Board of Chosen Freeholders of Union County,* 3 *N. J.* 73, 78 (1949), stated as follows:

"Looking at the legislative scheme for providing capital funds for parks, it is evident that it was the uniform design of the Legislature to place the ultimate control of such appropriations to the Park Commission in the electorate either directly through the device of a referendum or indirectly through its elected representatives, the members of the Board of Chosen Freeholders. This design is apparent throughout the varying provisions of the twenty different acts relating to capital expenditures."

This very same idea is found in regard to school funds where in chapter VI districts a certain amount of control is given to the governing body and in chapter VII school districts where the control is exercised directly by the people through means of referendum. It is *R. S.* 18:6–53 which gives the governing body the right to reject a certified amount which is in excess of a specified standard. It is this section which gives rise to the alleged impasse which is at the core of the plaintiffs' complaint. The pertinent parts of *R. S.* 18:6–53 are hereby repeated as follows:

"The governing body of a municipality shall upon receipt of the notice, appropriate the amount certified  *  *  *.  No amount in excess of one and one-half per cent of the valuation of the assessable ratables  *  *  *  shall be appropriated except with the concurrence and consent of the governing body  *  *  *."

The first sentence of *R. S.* 18:6–53 is a mandatory directive to the governing body to appropriate the sum certified. If the amount certified is within 1½% of the valuation of the assessable ratables, the governing body must appropriate. There is no room here for discretion. *Townsend v. State Board of Education,* 88 *N. J. L.* 97, 100 (*Sup. Ct.* 1915). However, if the sum certified exceeds 1½% of the valuation of assessable ratables the governing body need not consent to appropriate it. The governing body may now use its discretion to prevent the local budget from being overburdened. However, the statute should not be construed as requiring this discretion to be expressed by a total acceptance or total rejection of any amount which is in excess of the standard set forth therein. Under the statute,

once the board of school estimate has certified an amount to the governing body, the latter must appropriate a sum for the school budget. If the amount certified by the board exceeds 1½% of the valuation of the assessable ratables, the governing body need not appropriate the full amount, although it must appropriate a minimum amount which would be equal to 1½% of the valuation of the assessable ratables. The governing body could also choose to appropriate a sum which, though less than the amount certified, would exceed the 1½% figure. In effect, this is exactly what happened in the present case.

■ On February 15, 1961 the board of school estimate certified a school budget of $6,308,248.71, which was in excess of 1½% of the assessable ratables. The city council on February 28 refused to appropriate the amount so certified. On March 29 the city council formally appropriated $6,147,730.86 for school purposes. Between February 15 and March 29 the board of school estimate had rescinded its original certification and revised the figure to $6,147,730.86, which was the amount approved by city council. As shown above, R. S. 18:6-53 gives the city council the right to appropriate an amount in excess of 1½% of the valuation of the assessable ratables even though such a figure is less than that originally certified by the board of school estimate. R. S. 18:6-53 need not be interpreted to give the city council "all or nothing" power, so to speak. The interpretation urged herein would eliminate the void pointed out by the plaintiffs. No formal action would be required by the board of school estimate after February 15, as the governing body, having received the board's certification, must act, although such action need not necessarily be in agreement with the figure certified to it by the board if the amount certified exceeds the 1½% mentioned above. Such a construction is in consonance with the laws of statutory construction. A statutory construction calling for unreasonable results should be avoided where reasonable results consistent with the indicated purpose of the act as a whole are equally

possible. *City of Clifton v. Passaic County Board of Taxation*, 28 *N. J.* 411 (1958).

In the case at bar, the intervening action of the board of school estimate taken between February 15 and March 29 is of no consequence, since the only acts we are concerned with after February 15 are those of the city council. In arriving at a reduced compromise appropriation, the city council would be expected to consult with both the board of school estimate and the board of education. The intervening rescinding and recertification by the board of school estimate did serve to apprise the city council of a compromise figure with which the board of education could effectively carry out its responsibilities. The fact that the board of school estimate conveyed its opinion in the way that it did, rather than by private conferences with the city council, does not affect the final action taken by the city council.

## IV.

The plaintiffs contend that the word "shall" in *N. J. S. A.* 18:6–49 and 18:6–50 requiring both the fixing and determining of the amount necessary for public school purposes and the making of the certification therefor between February 1 and 15 in one case, and on or before February 15 in the other, makes this mandatory; that the word "shall" is employed in these statutes in the mandatory sense. In the case at bar the board of school estimate did fix and determine the amount of money necessary for public school purposes and issued its certificate to that effect on or before February 15, 1961, and thus did comply with the provisions of *N. J. S. A.* 18:6–50. However, as stated above, this statute is *in pari materia* with *R. S.* 18:6–53 and both must be construed together.

The plaintiffs have presented some logical arguments in citing two 1939 statutes (*L.* 1939, *cc.* 11, 39) in support of their contentions that the provisions of

*N. J. S. A.* 18:6–49 and 18:6–50 are mandatory. The two 1939 statutes extended the dates for the approval, hearing and final adoption of school budgets for one month and to April 24, 1939, and gave a board of education the authority to rescind its original action and substitute a new budget even after the board of school estimate had issued its certificate. The provisions of these statutes when construed together, however, mean that when a board of education shall rescind its action in adopting the budget—after the board of school estimate has issued its certificates—the date for the approval, hearing and final adoption of the budget and all other procedures pertaining to the board of education budget shall be extended for one month in one statute and until April 24, 1939 in the other statute. In other words, both statutes refer to the power of the board of education to rescind the certificate of the board of school estimate. The conclusions drawn by the plaintiffs in comparing the 1939 statutes with *N. J. S. A.* 18:6–49 and 18:6–50 have no application to the facts in the present case. In the case at bar we are not dealing with an attempt by the board of education to rescind a certificate of the board of school estimate, but rather the rescission of the board of school estimate of its *own* certificate. Furthermore, *N. J. S. A.* 18:6–49 and 18:6–50 must be construed in conjunction with *N. J. S. A.* 40:2–10.1, which took effect on May 18, 1949 and which clearly authorizes the Division of Local Government of the State of New Jersey to receive for examination and certification the budget of any municipality not filed within the time limit prescribed by statute, even though such budget may not have been introduced and approved within the time limits prescribed, provided a sufficient and valid explanation is given for the delay.

Therefore, it is the opinion of this court that (1) there is no emergency within the intent and purpose of *R. S.* 18:6–55 through 57; (2) an emergency can only be initiated by the board of education predicated on substantial proof of such emergency; (3) defendant board of school

estimate did have the legal right to rescind the estimate made prior to February 15, 1961 and submit a revised estimate to city council subsequent to February 15, 1961; and (4) city council did have the legal right and duty to take the actions referred to in the complaint on March 28, 1961 and March 29, 1961.

Therefore, the motion for summary judgment made in behalf of the plaintiffs is denied.

The motion for summary judgment made in behalf of the defendants is granted.